UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
Chaile Steinberg, Derivatively on Behalf of Bank :
of America Corporation, :
                                                  Plaintiff, :
                                                        : 1:14-cv-2023 (ALC)
           -against- :
                                                        : **OPINION & ORDER**
Angelo Mozilo, David Sambol, Rebeca Mairone, :
Charles O. Holliday, Jr., Brian T. Moynihan, and :
Sharon L. Allen :
                                                   Defendants, :
             -and- :
Bank of America Corporation, :
                                      Nominal Defendant. :
------------------------------------------------------------------x
**ANDREW L. CARTER, JR., United States District Judge:**

## I. INTRODUCTION

    Plaintiff Chaile Steinberg, a shareholder of nominal defendant Bank of America Corporation, brings a derivative action on the corporation's behalf related to its acquisition of Countrywide Financial Group in 2008. She sues former officers of Countrywide, seeking indemnification from and contribution toward damages in a federal trial that found Bank of America liable for Countrywide's fraudulent practices. Steinberg also sues officers and directors of Bank of America for breach of fiduciary duty because they failed to timely respond to her demand that the corporation investigate and take legal action against the Countrywide officers. Bank of America Corporation moves to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and 23.1(b)(3). For the reasons discussed below, the motion to dismiss is granted.

## II. BACKGROUND

On July 1, 2008, Bank of America ("BoA") acquired Countrywide Financial Corporation ("Countrywide"). Complaint ¶ 3. Prior to its acquisition, Countrywide had been the nation's largest mortgage lender and a dominant player in the subprime lending market. Id. In 2007, faced with a dwindling market for subprime loans, Countrywide redirected its operations toward prime loan origination. Id. It developed and implemented a streamlined loan origination program called the "High Speed Swim Lane" ("HSSL"). Id. ¶ 5. HSSL's lack of internal quality controls ultimately resulted in mounting financial losses both for Countrywide and the entities to whom it sold loans. Id. ¶ 6-9. In 2012, the federal government brought an action against BoA (as Countrywide's successor) under the Financial Institutions, Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C § 1833(a), seeking fines and penalties for fraudulent activity related to Countrywide's use of the HSSL program. Id. ¶ 10. See United States v. Countrywide Fin. Corp., 961 F. Supp. 2d 598 (S.D.N.Y. 2013) (granting in part and denying in part defendants' motion to dismiss).

On September 17, 2013, plaintiff Steinberg sent the BoA Board a letter demanding that it investigate any legal claims against Countrywide and BoA officers responsible for fraudulent actions stemming from involvement with HSSL. Id. ¶ 12, Ex. A. The letter further demanded that BoA commence legal proceedings against any officers implicated in wrongdoing and secure agreements with potential defendants to toll relevant statutes of limitation. Id. Ex. 1 at 4. BoA's Associate General Counsel responded on September 27, 2013, stating "It is my expectation that the Board will proceed to consider the Demand, and a further response will be provided to you in due course." Id. ¶ Ex. 2.

A month later, in October 2013, a federal jury found BoA guilty of fraud and liable for penalties. Id. ¶ 10. Days after the verdict, on October 28, 2013, Steinberg's attorneys sent the

BoA Board a second letter, demanding that it "inform us when the Board plans to consider and respond to our client's letter." Id. ¶ Ex. 3. BoA's Associate General Counsel responded on November 5, 2013, stating that "[a]s indicated previously, we anticipate that the Board will proceed to consider the Demand, and further update will be provided to you." Id. ¶ Ex. 4.

Steinberg wrote back a week later, on November 13, 2013, demanding inspection of Board materials related to her demand in order to assess whether the Board had taken appropriate action in response. Id. Ex 5 at 2. BoA's Associate General Counsel then sent her a third letter on November 20, 2013 in which it characterized her request as improper because the Board had not yet made a decision regarding her original demand. Id. ¶, Ex. 6. The letter closed with a commitment to provide a response to the demand "in due course, after a decision on the Litigation Demand by the Board." Id. ¶, Ex. 6 at 2. A month later, on December 20, 2013, BoA's Associate General Counsel sent Steinberg a letter informing her that the Board had authorized an Audit Committee to consider her demand and anticipating a further response in due course. Id. ¶, Ex. 7.

Six weeks later, on February 14, 2014, Steinberg's attorneys wrote the Board again, asking it to "inform us whether the Audit Committee and the Board plans [sic] to consider and respond to our client's letter." Id. ¶, Ex. 8. Rather than wait for a response, Steinberg filed the present action on March 21, 2014. Three days later, the BoA Board sent Steinberg a letter refusing her demand to bring suit against Countrywide officers. ECF No. 39 at 4-5. At a conference on July 15, 2014, called to address BoA's pending motion to dismiss, Steinberg's counsel asserted that, as "the master of our pleadings," they would not move to amend their complaint in light of BoA's refusal letter. ECF No. 54 at 20. Accordingly, the Court does not consider that letter in the following analysis.

## III. DISCUSSION

### A. Legal standard for a motion to dismiss a derivative complaint

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663. On a motion to dismiss, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor. Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir.2008). But to satisfy Rule 12(b)(6), a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir.2010). Ultimately, on a motion to dismiss "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir.2006) (internal quotation marks and citation omitted).

Additionally, a complaint "asserting derivative claims must "state with particularity: any effort by the plaintiff to obtain the desired action from the directors [ie. a presuit demand upon the corporation] . . . and . . . the reasons for not obtaining the action or not making the effort." Fed.R.Civ.P. 23.1(b)(3). Rule 23.1 does not create the presuit demand requirement; that turns on substantive state law. The purpose of the federal rule is merely to assure that the complaint alleges sufficient facts to enable a federal court to decide whether any presuit demand requirements imposed by state law were fulfilled. See Halebian v. Berv, 590 F.3d 195, 211 (2d Cir. 2009).

BoA moves to dismiss Steinberg's complaint for failure to comply with either of these rules.

### B. The Court has jurisdiction.

Defendants do not dispute jurisdiction and the Court finds it exists under 28 U.S.C. §§ 1332(a)(2), as Steinberg and the parties possess diversity of citizenship and the alleged amount in controversy is over $75,000.

### C. Delaware law governs.

In a diversity action, a federal court applies the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). New York law looks "to the law of the state of incorporation in adjudicating a corporation's 'internal affairs,' including . . . a shareholder derivative action." NAF Holdings, LLC v. Li & Fung (Trading) Ltd., 772 F.3d 740, n.2 (2d Cir. 2014) (citing Galef v. Alexander, 615 F.2d 51, 58 (2d Cir.1980)). BoA's state of incorporation is Delaware. Happily, both parties agree that because BoA is a Delaware corporation, Delaware substantive law governs. Accordingly, this Court applies Delaware law to the matter at hand.

### D. Legal standard for a derivative claim brought before a refusal letter is issued

In Delaware, the business and affairs of a corporation must be managed by a board of directors. 8 Del. C. § 141a. The derivative suit is a notable exception to the clear mandate of § 141a. Created at equity, it "permits an individual shareholder to bring suit to enforce a *corporate* cause of action against officers, directors, and third parties." Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 138 (2d Cir. 2004) (emphasis in original) (internal quotations removed) (citing Kamen v. Kemper Fin. Serv., 500 U.S. 90, 95 (1991)). To curb potential abuses of the derivative action, courts require "the shareholder [to] demonstrate that the corporation itself ha[s] refused to proceed after suitable demand, unless excused by extraordinary conditions." Scalisi, 380 F.3d at 138 (2d Cir. 2004) (internal citations and quotations omitted). Thus, under Delaware law, a

stockholder's complaint must allege with particularity that she "(a) has first demanded that the directors pursue the corporate claim and the directors have wrongfully refused to do so; or (b) establish[] that pre-suit demand is excused because the directors are deemed incapable of making an impartial decision regarding the pursuit of the litigation. Wood v. Baum, 953 A.2d 136, 140 (Del. 2008).

When a corporation refuses a shareholder's demand to take legal action, "allegations of wrongful refusal are reviewed under the business judgment rule, which creates 'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Espinoza v. Dimon, 2015 WL 3684972, at *4 (2d Cir. June 16, 2015) (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del.1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del.2000). Accordingly, in the standard demand refused case, filed after a board issues a demand refusal letter, "[t]he issues are solely the good faith and the reasonableness of the committee's investigation." Espinoza, 2015 WL 3684972, at *4 (citing Zapata Corp. v. Maldonado, 430 A.2d 779, 787 (Del.1981)). But this is not a standard demand refused case, because Steinberg filed her complaint before BoA refused her demand. And in fact, "[r]elatively few Delaware cases have arisen in which a stockholder attempts to move forward with a derivative suit *before* a board formally responds to the stockholder's demand." Rich v. Chong, 66 A.3d 963, 976 (Del. Ch. 2013) (emphasis in original).

Courts have used two standards to weigh the issues in these relatively few cases. Those standards distinguish between a board that takes no action at all in response to a demand and a board that takes some action but has yet to issue a formal response to a demand. Id. at 966-67. In the case of the former, Allison v. Gen. Motors Corp., 604 F. Supp. 1106 (D. Del.) aff'd, 782 F.2d

1026 (3d Cir. 1985), holds that "[t]here can be no precise rule as to how much time a Board must be given to respond to a demand." Id. at 1117. Instead, "[t]he question in premature filing cases is . . . whether the time between demand and filing of suit was sufficient to permit the Board of Directors to discharge its duty to consider the demand." Id. Factors that weigh on that question include "the complexity of the technological, quantitative, and legal issues raised by the demand." Id. 1117-1118. See also Gamoran v. Neuberger Berman, LLC, 2012 WL 2148217, at *5 (S.D.N.Y. June 12, 2012) (citing Allison for the same proposition). Thus, Allison advances a fact-specific reasonableness standard, or "essentially a discretionary ruling on a predominantly factual issue." Charal Inv. Co. v. Rockefeller, 1995 WL 684869, at *3 (Del. Ch. Nov. 7, 1995) (citing Levine v. Smith, 591 A.2d 194, 200 (Del. 1991) overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)).

The second standard applies when a board takes some action in response to a demand, but has yet to issue a formal response. In that case, Delaware law hews closer to the deferential business judgement rule used in post-refusal cases. Under this standard, "the methods and manner in which the board has chosen to act on the demand represent judgments entitled to the benefit of the business judgment rule if taken in a manner that was informed and in good faith." Rich v. Chong, 66 A.3d 963, 977.[1] Thus, in order to survive a motion to dismiss, "the plaintiff by

---

[1] Although Rich did not directly cite to Allison when distinguishing the two pre-refusal standards, it cited to other cases that did. See Rich v. Chong, 66 A.3d 963, 976 n. 112 (citing Charal Inv. Co. v. Rockefeller, 1995 WL 684869, at 3; Recchion v. Kirby, 637 F.Supp. 1309, 1318 (W.D.Pa.1986)). Of Allison, Charal, and Recchion, only the last involved facts where a corporation took no response whatsoever to a shareholder's demand. Nonetheless, Rich represents the most recent statement of Delaware law on pre-refusal standing for a derivative claim, so this Court is bound to apply it.

Even if the Court's choice of Delaware law were discretionary, however, Rich's statement of the law would make the better choice. Allison's reasonableness test, if applied after a board begins to investigate a demand, could incentivize plaintiffs to rush to suit before receiving a formal response in the hopes of preempting deference to the board under the business judgement rule. Because corporate counsel would then be forced to divert its focus from responding to the demand to defending itself in a lawsuit, such preemptive suit could in fact prevent a response within a reasonable period of time. Allison is thus better confined to situations where a board has taken no action whatsoever, as Rich instructs.

particularized pleading [must] raise[] a reasonable doubt that the board's actions are in compliance with its fiduciary duties." Id. at 977.

Steinberg argues that the Allison standard applies to her claim and that the Court's inquiry should be limited to whether she afforded BoA a reasonable time to investigate and respond to her demand. However, all of the cases she cites to in support of Allison's continued vitality originated before Rich. See Gamoran v. Neuberger Berman, LLC, 2012 WL 2148217 (S.D.N.Y. June 12, 2012); Charal Inv. Co. v. Rockefeller, 1995 WL 684869 (Del. Ch. Nov. 7, 1995); Rubin v. Posner, 701 F. Supp. 1041 (D. Del. 1988). Further, two of those cases issued not from Delaware state courts, but federal district courts interpreting state law. The singular Delaware Supreme Court case she cites to, Grimes v. Donald, 673 A.2d 1207, 1220 (Del. 1996) overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000), does not even mention Allison's reasonable investigation period standard.

In contrast, the most recent statement of Delaware state law, issued by a Delaware state court, squarely holds that in cases where "a demand has been made, the board has taken some action in response, and the demanding stockholder has then sued as a derivative plaintiff *before* the board has responded to the demand," the board's actions are entitled to deference under the business judgment rule unless a "particularized pleading raises a reasonable doubt that the board has acted in good faith or with due care." Rich v. Chong, 66 A.3d 963, 977.

It is undisputed that the BoA board had taken some action in response to Steinberg's demand at the time she filed her complaint. Steinberg herself attached to her complaint BoA's letters reporting that the demand would be considered by the Board and that the Board had authorized an Audit Committee to consider and respond to her demand. Accordingly, the Rich v.

Chong standard applies, and Steinberg must particularly plead reasonable doubts as to the Board's good faith or due care.

### E. Steinberg fails to particularly plead that the BoA's Board's post-demand actions are not in compliance with its fiduciary duties.

Steinberg's complaint must be dismissed for failure to comply with both Fed.R.Civ.P. 12(b)(6) and 23.1(b)(3). She advances only conclusory allegations that "the Board has wrongfully ignored and refused Plaintiff's Demand" and that BoA "breached its fiduciary duty to inform itself of all material information reasonably available before determining to refuse Plaintiff's demand"; that "the Board is behaving in bad faith" and "breached [its] fiduciary duties to the Company"; and that the individual Board members "have breached and are breaching their fiduciary duties of good faith, loyalty, due care, fair dealing and candor." Complaint ¶¶ 83, 92, 110. Such statements are devoid of particular facts that would lead to reasonable inferences in support of her claims and thus do not comply with Rule 23.1. Indeed, the allegations here offer nothing more than "labels and conclusions," and thus fail even Rule 12(b)(6)'s more liberal pleading standard. See Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321.

In short, "[t]he Complaint merely states that plaintiff's demand was refused and that the refusal was wrongful." Baron v. Siff, 1997 WL 666973, at *3 (Del. Ch. Oct. 17, 1997). But "Delaware law does not permit a plaintiff to overcome the business judgment rule simply by asserting that the substance of a board of director's decision was wrong." In re Merrill Lynch & Co., Inc., Sec., Derivative & ERISA Litig., 773 F. Supp. 2d 330, 346 (S.D.N.Y. 2011) aff'd sub nom. Lambrecht v. O'Neal, 504 F. App'x 23 (2d Cir. 2012). Accordingly, plaintiff's complaint fails to state a particular, plausible claim for relief, and must be dismissed.

### F. Leave to amend

BoA reminds the Court that Steinberg refused several opportunities to amend her complaint subsequent to receiving the refusal letter. On this set of facts, it argues that Steinberg should not be granted leave to replead. See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006) (rejecting "a broad rule to the effect that, in the case of a counseled plaintiff, abuse of discretion will be found and the case remanded whenever a district court fails to provide for repleading"). Steinberg counters that the Second Circuit's permissive repleading standard embodies a "strong preference for resolving disputes on the merits" that justifies leave to replead in this case. Williams v. Citigroup Inc., 659 F.3d 208, 212-13 (2d Cir. 2011). Steinberg omits BoA's multiple entreaties that she replead to reflect the actual state of facts of post-demand refusal and thus allow this Court to resolve this dispute on its merits. Nonetheless, at this juncture, the Court reserves judgment as to whether to grant leave to replead, to be resolved at a conference.

## IV.   CONCLUSION

For the reasons described above, Defendant's motion to dismiss is **GRANTED**. (ECF No. 56.) The Court also schedules a status conference for October 30, 2015 at 2:15 p.m. Counsel for the parties should report to Courtroom 1306 at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.

**SO ORDERED.**

Dated: **September 29, 2015**
       **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**